**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America,<br><br>                         Plaintiff/Respondent,<br><br>v.<br><br>Lonnie Ben,<br><br>                        Defendant/Movant. | No. CV-14-08131-PCT-NVW (ESW)<br>      CR-12-08250-PCT-NVW<br><br>**REPORT AND<br>RECOMMENDATION** |

**TO THE HONORABLE NEIL V. WAKE, UNITED STATES DISTRICT JUDGE:**

Pending before the Court is Lonnie Ben's ("Movant") Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 1) (the "Motion to Vacate"). Respondents have filed their Response (Doc. 10) and Movant has filed a Reply (Doc. 18). The matter is deemed ripe for consideration.

In July 2013, Movant was sentenced to 144 months in prison after pleading guilty to two counts of Assault with a Dangerous Weapon in violation of 18 U.S.C. §§ 1153, 113(a)(3) and one count of Use of a Firearm During and in Relation to a Crime of Violence in violation of 18 U.S.C. § 924(c)(1)(A). The Motion to Vacate raises two claims alleging that Movant's defense counsel failed to provide effective assistance in connection with the negotiated plea agreement. As the record conclusively shows that Movant is entitled to no relief, it is recommended that the Court deny the Motion to

Vacate without holding an evidentiary hearing.[1]

## I. BACKGROUND

On October 18, 2012, Movant pointed a firearm at Movant's ex-girlfriend and her new boyfriend.  (Doc. 10-1 at 8-9).  Movant was indicted on the following counts: one count of Assault with Intent to Commit Murder in violation of 18 U.S.C. §§ 1153, 113(a)(1); three counts of Use of a Firearm in a Crime of Violence in violation of 18 U.S.C. § 924(c)(1)(A); and two counts of Assault with a Dangerous Weapon in violation of 18 U.S.C. §§ 1153, 113(a)(3).  (Case No. CR-12-08250-PCT-NVW, Doc. 14).  The indictment also included a forfeiture allegation.

On March 21, 2013, Movant signed a plea agreement in which Movant agreed to plead guilty to Counts 3 and 5 (Assault with a Dangerous Weapon) and Count 4 (Use of a Firearm During and in Relation to a Crime of Violence).  (Doc. 10-1 at 2).  The plea agreement contains a section entitled "Waiver of Defenses and Appeal Rights" (the "Waiver Provision").  (Doc. 10-1 at 5).  The Waiver Provision provides that if Movant's sentence is consistent with the plea agreement, Movant agrees to waive any and all rights to appeal, challenge, or collaterally attack Movant's convictions, sentences, or order of restitution or forfeiture.  (*Id.*).  The plea agreement also states that Movant read the entire agreement with the assistance of his attorney, agreed to the terms and conditions, entered into the plea voluntarily, and was satisfied with his counsel's representation.  (*Id.* at 9-10).

On March 21, 2013, U.S. Magistrate Judge Steven P. Logan[2] conducted a change of plea hearing.  (Doc. 10-3 at 2-20).  After Judge Logan completed the plea colloquy,

---

[1] An evidentiary hearing is not required in a Section 2255 proceeding if the allegations are "palpably incredible or patently frivolous" or if the issues can be conclusively decided on the basis of the evidence in the record.  *See Blackledge v. Allison,* 431 U.S. 63, 76 (1977); *United States v. Mejia–Mesa,* 153 F.3d 925, 929 (9th Cir. 1998) (noting that a "district court has discretion to deny an evidentiary hearing on a § 2255 claim where the files and records conclusively show that the movant is not entitled to relief").

[2] Judge Logan is now a U.S. District Court Judge.

Movant pled guilty to Counts 3, 4, and 5.  (*Id*. at 17-18).  Judge Logan found that Movant knowingly, intelligently, and voluntarily entered the guilty pleas and understood the charges.  (*Id*. at 18).  On July 23, 2013, Senior District Judge Ronald S.W. Lew held a sentencing hearing.  (Doc. 10-6 at 2-31).  Judge Lew sentenced Movant to 144 months in prison, followed by a total of five years of supervised release.  (*Id*. at 26-27).  Pursuant to the terms of the plea agreement, Judge Lew dismissed Counts 1, 2, and 6.

On July 21, 2014, Movant, through counsel, filed the Motion to Vacate (Doc. 1).  In its August 20, 2014 Order (Doc. 5), the Court ordered the Government to answer the Motion to Vacate.

## II.  LEGAL STANDARDS

It is a "fundamental rule that plea agreements are contractual in nature and are measured by contract law standards."  *U.S. v. Jeronimo*, 398 F.3d 1149, 1153 (9th Cir. 2005).  The plain language of a plea agreement will be generally enforced if the agreement is clear and unambiguous.  *Id*.  This includes a plea agreement's provision whereby a defendant waives the right to challenge his or her conviction and sentence through appeal or a collateral proceeding, such as a § 2255 proceeding.  Yet a defendant may still bring a claim alleging that the waiver or plea agreement was involuntary or that the ineffective assistance of counsel ("IAC") rendered the waiver or plea agreement involuntary.  *See Washington v. Lampert*, 422 F.3d 864, 871 (9th Cir. 2005) (holding that a plea agreement that waives the right to file a federal habeas petition pursuant to § 2254 is unenforceable with respect to an ineffective assistance of counsel claim that challenges the voluntariness of the waiver); *U.S. v. Pruitt*, 32 F.3d 431, 433 (9th Cir. 1994) (expressing doubt that a plea agreement could waive a claim that counsel erroneously induced a defendant to plead guilty or accept a particular plea bargain); *U.S. v. Abarca*, 985 F.2d 1012, 1014 (9th Cir. 1993) (expressly declining to hold that a waiver forecloses a claim of ineffective assistance or involuntariness of the waiver); *see also Jeronimo*, 398 F.3d at 1156 n.4 (declining to decide whether waiver of all statutory rights included claims implicating the voluntariness of the waiver).

The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984) applies to IAC claims arising from the plea process. *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985); *Jeronimo*, 398 F.3d at 1155.  A defendant arguing an IAC claim must establish that his or her counsel's performance was (i) objectively deficient and (ii) prejudiced the defendant.  This is a deferential standard, and "[s]urmounting *Strickland's* high bar is never an easy task."  *Clark v. Arnold*, 769 F.3d 711, 725 (9th Cir. 2014) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

To establish the test's performance prong in the context of a guilty plea, a defendant must establish that his or her counsel's advice regarding the guilty plea was outside "the range of competence demanded of attorneys in criminal cases."  *Hill*, 474 U.S. at 56-58.  Regarding the prejudice prong, a defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Id*. at 58-59.

Although the performance factor is listed first in *Strickland's*  two-part test, a court may consider the prejudice factor first.  In addition, a court need not consider both factors if the court determines that a defendant has failed to meet one factor.  *Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."); *LaGrand v. Stewart*, 133 F.3d 1253, 1270 (9th Cir. 1998) (a court need not look at both deficiency and prejudice if the habeas petitioner cannot establish one or the other).

### III.   ANALYSIS OF THE MOTION TO VACATE

The Motion to Vacate contains two grounds for relief, both of which allege that Movant did not knowingly, intelligently, and voluntarily enter into the plea agreement due to the ineffectiveness of Movant's defense counsel in violation of the Sixth Amendment.  As explained in the following discussion, neither of these IAC claims satisfy the two-prong *Strickland* test.

## A. IAC Claim Based on Defense Counsel's Alleged Failure to Explain Plea Agreement

Movant bases his first IAC claim on defense counsel's alleged failure to explain to Movant the consequences of pleading guilty. (Doc. 1-1 at 4). Movant also alleges that his defense counsel failed to "correctly advise and explain" the sentence that was mandated in the plea agreement. (*Id.*). To support his claim, Movant has provided an affidavit in which Movant avers that his defense counsel:

> never explained to me the consequences of pleading guilty, specifically as it related to waiving any appeal rights. I did not know that this included both direct appeals and habeas corpus claims. I did not understand prior to pleading guilty, during the plea colloquy, nor after pleading guilty and after being sentenced that as a condition of my pleading guilty that I was voluntarily giving up any right to attack my sentence and judgment of guilt on any grounds, including ineffective assistance of counsel. Because my trial counsel never explained to me the consequences of my guilty plea (specifically that I was waiving any and all appellate rights), I was surprised when my current counsel told me of this consequence.

(Doc. 1-2 at 1-2). Movant also asserts that his defense counsel "failed to spend any meaningful amount of time with [Movant]" and that defense counsel "did not even speak with [Movant] for more than 30 minutes (total) prior to the plea colloquy, despite having been his attorney for over three months." (Doc. 1-1 at 11-13).

"Adequate consultation between attorney and client is an essential element of competent representation of a criminal defendant." *Summerlin v. Schriro,* 427 F.3d 623, 633 (9th Cir. 2005) (citation omitted); *Correll v. Ryan,* 539 F.3d 938, 943 (9th Cir. 2008). However, while Movant contends that he met with his defense counsel only briefly, a brief consultation alone does not establish deficient performance. *See White v. Godinez,* 301 F.3d 796 (7th Cir. 2002) ("A brief consultation does not by itself establish that counsel's performance was inadequate."); *see also Moody v. Polk,* 408 F.3d 141, 148 (4th Cir. 2005) (there is no set minimum number of attorney-client meetings that must be held before trial to prepare an attorney to provide effective assistance of counsel); *United*

*States v. Olson,* 846 F.2d 1103, 1108 (7th Cir. 1988) (an experienced lawyer "can get more out of one conference with his client than a less well-trained lawyer could get out of several").

Other than Movant's own self-serving affidavit, there is no evidence that Movant's defense counsel failed to adequately explain to Movant the consequences of pleading guilty, the Waiver Provision, and the range of possible sentences that Movant could receive. *See, e.g., Womack v. Del Papa*, 497 F.3d 998, 1004 (9th Cir. 2007) (IAC claim denied where, aside from his self-serving statement, which was contrary to other evidence in the record, there was no evidence to support his claim). Movant's counsel told Judge Logan at the change of plea hearing that (i) he spent approximately an hour with Movant prior to the hearing discussing the plea agreement "very thoroughly"; (ii) discussed the plea agreement with Movant during a telephone call once the plea was reached; and (iii) sent to Movant in writing two versions of the plea agreement drafted by the Government. (Doc. 10-3 at 5). Movant answered affirmatively when Judge Logan asked him if he was "fully satisfied with all the work" his counsel had done. (*Id*. at 17). Further, by signing the plea agreement, Movant acknowledged that "I am satisfied that my defense attorney has represented me in a competent manner." (Doc. 10-1 at 10). Even assuming *arguendo* that Movant's defense counsel was deficient, Movant has not established that such deficient performance was prejudicial in light of Judge Logan's thorough inquiry into whether Movant made his guilty plea knowingly, intelligently, and voluntarily.

Immediately above the defendant's signature line on the plea agreement is a sentence stating "I fully understand the terms and conditions of this plea agreement." (Doc. 10-1 at 11). At the change of plea hearing, Judge Logan confirmed with Movant that it is Movant's signature that appears on that signature line. (Doc. 10-3 at 6). Upon questioning, Movant stated that he read through "each and every page and section" of the plea agreement and understood the agreement in its entirety. (*Id*.). In addition, Judge Logan informed Movant of the consequences of his guilty plea and all other items

required by Rule 11(b) of the Federal Rules of Criminal Procedure.  (Doc. 10-3 at 2-20).  For instance, Judge Logan explained to Movant that the plea agreement contains a "stipulation that states that you and the United States stipulate that <u>you shall be sentenced to a term of imprisonment from 10 to 15 years in federal prison</u>."  (Doc. 10-3 at 9) (emphasis added).  Movant indicated that he understood the provision.  (*Id.*).  Judge Logan also explained to Movant that "if your plea is accepted and the sentencing judge imposes a sentence consistent with the terms of your plea agreement you will not be permitted to withdraw from your plea or challenge your judgment and sentence on <u>appea[l] or in a collateral proceeding</u>.  <u>This is also known as waiving your appellate rights</u>."  (Doc. 10-3 at 11) (emphasis added).  Movant stated he understood that he would be waiving his appellate rights.  (*Id.* at 12).  After completing the plea colloquy, Judge Logan found that Movant knowingly, intelligently, and voluntarily entered pleas of guilty, that there was a factual basis for the pleas, and that Movant was competent to enter the guilty pleas.  (*Id.* at 18).

On March 25, 2013, Judge Logan issued a "Findings and Recommendation of the Magistrate Judge Upon a Plea of Guilty and Order," which set forth all of Judge Logan's findings, including that (i) Movant knowingly, intelligently, and voluntarily pled guilty; (ii) Movant knowingly, intelligently, and voluntarily waived the right to appeal or to collaterally attack his sentence; and (iii) Movant was satisfied with the representation of his defense counsel.  (Case No. CR-12-08250-PCT-NVW, Doc. 27).  Judge Logan ordered that "any objection to the guilty plea proceedings and any request for supplementation of those proceedings" must be made within fourteen days of service of the Findings and Recommendation.  (*Id.*).  Movant did not file an objection or request for supplementation.  On April 8, 2013, the Court accepted Movant's guilty plea.  (Case No. CR-12-08250-PCT-NVW, Doc. 30).

"Solemn declarations in open court carry a strong presumption of verity" and a district court's findings in accepting a guilty plea "constitute a formidable barrier in any subsequent collateral proceedings."  *Blackledge*, 431 U.S. at 74; *see also United States v.*

- 7 -

*Ross*, 511 F.3d 1233, 1236 (2008).  The plea colloquy reflects that Movant understood the consequences of pleading guilty and the range of possible sentences.  The plea colloquy further reflects that Movant knowingly, intelligently, and voluntarily pled guilty pursuant to the plea agreement and agreed to the Waiver Provision.  Movant has therefore failed to establish the prejudice prong of the *Strickland* test.  *See United States v. Boniface*, 601 F.2d 390, 393 (9th Cir. 1979)  (rejecting defendant's claim that his attorney coerced him into pleading guilty where the trial court made a "thorough inquiry to satisfy itself that the defendant had been informed about all relevant matters and that his plea was voluntary"); *United States v. Rubalcaba*, 811 F.2d 491, 494 (9th Cir. 1987) (rejecting a defendant's IAC claim based on his attorney's alleged failure to properly advise him of potential consecutive sentences where the defendant acknowledged at the change of plea hearing the potential for consecutive sentences); *Gonzalez v. United States*, 33 F.3d 1047, 1052 (9th Cir. 1994) (holding that a defendant could not claim he was prejudiced by his attorney's alleged error in determining the defendant's likely sentence where (i) the district court informed the defendant of the maximum possible penalties and (ii) the defendant told the court he was satisfied with attorney).  Accordingly, the undersigned recommends that the Court dismiss Ground One.

**B. IAC Claim Based on Defense Counsel's Alleged Failure to Investigate**

In support of his second IAC claim, Movant alleges that:

> [Movant] was not given the guarantee of effective assistance in being properly advised about defenses that could be raised at trial. . . . This is most likely due to the lack of investigation on the part of [defense counsel]. . . . [Had defense counsel] fulfilled his duty under *Strickland* 'to make reasonable investigations' [Movant] would have had the information necessary to choose whether or not to waive his right to attack his sentence or to decline any plea and go to trial.

(Doc. 1-1 at 14.).

Defense counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691.  However, "the duty to investigate and prepare a defense is not limitless. . . ."

*Hendricks v. Calderon*, 70 F.3d 1032, 1040 (9th Cir. 1995) (counsel need not necessarily interview "every conceivable witness").  The Supreme Court has recognized that the duty to investigate does not require defense counsel "to scour the globe on the off chance something will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." *Rompilla v. Beard*, 545 U.S. 374, 382-83 (2005).  In assessing the adequacy of an attorney's investigation, "every effort [must] be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689.   Thus, a court must "conduct an objective review of the attorney's performance, measured for 'reasonableness under prevailing professional norms.'" *Wiggins v. Smith*, 539 U.S. 510, 523 (2003) (quoting *Strickland*, 466 U.S. at 688).  This includes a "context-dependent consideration of the challenged conduct as seen 'from counsel's perspective at the time.'" *Id*. (quoting *Strickland*, 466 U.S. at 689).

Here, despite Movant's assertion, the record indicates that Movant's defense counsel did conduct an independent investigation.  First, eyewitness Zachary Poyer stated that he was contacted by a man who stated he was Movant's attorney.  (Doc. 1-4 at 2).  Second, defense counsel stated at the sentencing proceeding that on two occasions he spoke to Evan Thompson, the criminalist at Arizona Department of Public Safety who test fired Movant's gun.  (Doc. 10-6 at 6-7).  Defense counsel was investigating the Government's contention that Movant pulled the trigger, but the gun misfired.  (*Id*. at 6-8).

Moreover, "[i]neffective assistance claims based on a duty to investigate must be considered in light of the strength of the government's case." *Eggleston v. United States*, 798 F.2d 374, 376 (9th Cir. 1986).   In its Response, the Government avows that it obtained thirteen audio-recorded witness statements, at least fourteen written witness statements, and numerous reports from law enforcement officers.   (Doc. 10 at 11).  Movant does not dispute the "abundant amount of evidence" the Government obtained against Movant.  (Doc. 18 at 3).  Yet Movant does not articulate why the alleged limited investigation by defense counsel fell below an objective standard of reasonableness.

*Burger v. Kemp*, 483 U.S. 776, 793-94 (1987) (limited investigation reasonable because all witnesses brought to counsel's attention provided predominantly harmful information); *Eggleston*, 798 F.2d at 376 ("When . . . the prosecution has an overwhelming case based on documents and the testimony of disinterested witnesses, there is not too much the best defense attorney can do.") (citation omitted).  Movant has therefore failed to meet the deficient performance prong of the *Strickland* test.  Even if defense counsel's performance was deficient, Movant has failed to establish that he was prejudiced by the lack of a more extensive investigation.

To support his IAC claim, Movant has provided affidavits from two individuals, Marwood Sloan and Zackary Poyer, who witnessed the incident on October 18, 2012. (Doc. 1-3 at 1-2; Doc. 1-4 at 1-2).  Movant asserts that "[s]urely more evidence would have been gained had a fully [sic] a proper investigation occurred.  However even had the statements of these two eyewitnesses been the only information obtained, [Movant] would have been properly advised about defenses available to him."  (Doc. 1-1 at 13-14). In their affidavits, Mr. Sloan and Mr. Poyer aver that at no time during the incident did they see Movant (i) in possession of a firearm, (ii) pointing a firearm at anyone, or (iii) make any threats.  (Doc. 1-3 at 1; Doc. 1-4 at 1).  While Mr. Sloan denied being contacted by Movant's defense counsel, Mr. Poyer stated that he "spoke with a man who stated he was Movant's attorney."  (Doc. 1-3 at 2; Doc. 1-4 at 2).

As the Government indicates in its Response (Doc. 10 at 11-12), Mr. Sloan and Mr. Poyer's statements in their July 2014 affidavits are inconsistent with the statements made to law enforcement in October 2012.  On October 18, 2012, Mr. Sloan stated to Shiprock, Arizona law enforcement that "we were walking to the parking lot and [Movant] slowed down pulled the gun out, then I tried to stop him and step in front of [Movant] with the hand gun in his hand . . . ."  (Doc. 10-9 at 2).  On November 26, 2012, Mr. Sloan stated during an interview with the Federal Bureau of Investigation ("FBI") that he saw Movant "point a gun at [Movant's ex-girlfriend] out of the corner of his eye" and that he "stepped in between [Movant and Movant's ex-girlfriend] so it was no longer

pointing at [Movant's ex-girlfriend]". (Doc. 10-8 at 2). On October 25, 2012, Mr. Poyer stated during a FBI interview that "he saw that [Movant] had pulled out a silver handgun" and "saw [Movant] pointing the gun at someone." (Doc. 10-10 at 3).

Based on the record, the affidavits of Mr. Sloan and Poyer are not enough to overcome the "formidable barrier" established by Movant's sworn plea colloquy statements. *Blackledge*, 431 U.S. at 74. At the change of plea hearing, Movant informed the Court that he was satisfied with the assistance of his defense counsel. He did not indicate that his counsel failed to thoroughly investigate his case. Petitioner has not alleged any facts that raise doubts as to the verity of his statements during the plea colloquy.

In addition, Movant has not shown that, but for defense counsel's alleged error in failing to discover the inconsistent statements of Mr. Sloan and Mr. Poyer, he would not have pled guilty. Movant's assertion that "surely more evidence" would have been acquired had defense counsel conducted a more extensive investigation is not sufficient to establish prejudice. *Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997) ("speculation about what an expert could have said is not enough to establish prejudice"); *Ceja v. Stewart*, 97 F.3d 1246, 1255 (9th Cir. 1996) (defendant "fail[ed] to explain what compelling evidence additional interviews would have unearthed or to explain how an investigation of aggravation evidence would have negated the evidence of the multiple gunshot wounds.); *Hendricks*, 70 F.3d at 1042 ("Absent an account of what beneficial evidence investigation into any of these issues would have turned up, [defendant] cannot meet the prejudice prong of the *Strickland* test.").

Given the undisputed abundance of evidence against Movant, the undersigned does not find that the discovery of Mr. Sloan and Mr. Poyer's inconsistent statements would have led a rational defendant to insist on going to trial rather than accepting a plea agreement in which the Government agreed to dismiss half of the charges. *See Eggleston*, 798 F.2d at 376; *Roe v. Flores-Ortega*, 528 U.S. 470, 486 (2000) ("the prejudice inquiry depends largely on whether th[e] affirmative defense might have

succeeded, leading a *rational defendant* to insist on going to trial" (emphasis added)).  *Id.* Movant therefore has failed to satisfy the prejudice prong of the *Strickland* test. Consequently, the undersigned recommends that the Court dismiss Ground Two.

### III.  CONCLUSION

Based on the foregoing, the undersigned recommends that the Court dismiss the Motion to Vacate (Doc. 1) with prejudice.

Accordingly,

**IT IS RECOMMENDED** that the Motion to Vacate (Doc. 1) be **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* be **DENIED** because Movant has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.  The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6, 72.  Thereafter, the parties have fourteen days within which to file a response to the objections. Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review.  Failure to file timely objections to any factual determinations of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.  *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003); *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

Dated this 10th day of September, 2015.

_____
Eileen S. Willett
United States Magistrate Judge

- 12 -